UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| ANTHONY STEELY, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 5:20-cv-03778 |
| | : | |
| GALEN CLEMONS, | : | |
|     Defendant. | : | |
| | : | |

**O P I N I O N**
Motion for Summary Judgment, ECF Nos. 22, 23 — Denied

**Joseph F. Leeson, Jr.**      July 2, 2021
**United States District Judge**

## I. INTRODUCTION

This matter involves the events of a traffic stop initiated by Defendant, Pennsylvania State Police Trooper Galen Clemons, against Plaintiff Anthony Steely. Following a pursuit, Clemons used a Precision Immobilization Technique (PIT) maneuver to bring Steely's vehicle to a stop. Thereafter, Clemons discharged his weapon a single time, striking Steely. Steely filed suit, asserting claims of excessive use of force and assault and battery. After the close of fact discovery, Clemons filed the instant motion for summary judgment.

After review of the claims and factual record, the Court identifies genuine disputes of material fact. Accordingly, Clemons' motion for summary judgment is denied.

## II. PROCEDURAL BACKGROUND

On August 4, 2020, Steely filed a Complaint against both Clemons and the Pennsylvania State Police. *See* Compl., ECF No. 1. Defendants moved to dismiss the original Complaint. *See* ECF No. 5. On October 20, 2020, Steely filed an Amended Complaint, naming only Clemons as a Defendant. *See* Am. Compl., ECF No. 7. The Amended Complaint asserts a claim for

excessive use of force under 42 U.S.C. § 1983, Count I, and a claim for assault and battery, Count II. *See id.* Clemons filed an Answer to the Complaint on November 3, 2020. *See* Answer, ECF No. 11. Fact discovery closed on March 29, 2021. *See* ECF No. 14. Thereafter, on April 28, 2021, Clemons filed the present Motion for Summary Judgment. *See* Mot., ECF No. 23. Steely responded in opposition to the motion, *see* Resp., ECF No. 24, and Clemons filed a reply in support of the motion, *see* Reply, ECF No. 25.

### III. UNDISPUTED MATERIAL FACTS

On June 11, 2019, Steely drove from Brandywine Hospital to Kensington, Pennsylvania. *See* Pl.'s Dep. 105:16-17, 108:5-10, 109:12-21, ECF No. 22-1. After arriving in Kensington, Steely bought two or three bags of heroin, *see id.* at 116:15-17, and he injected himself with the contents of one of those bags while sitting in the car, *see id.* at 120:23–121:4. After waiting about 20 minutes in the car, Steely began a drive to Brookhaven, Pennsylvania. *See id.* at 99:6-9, 121:4-6. While driving on I-95 South, Steely noticed Clemons' state police vehicle driving behind him. *See id.* at 127:3-7, 137:1-10. After observing Steely drive in excess of the posted speed limit, Clemons turned on his lights and sirens to initiate a traffic stop. *See* Def.'s Dep. 36:6-11, 41:105, ECF No. 22-3; *see also* Pl.'s Dep. 142:23–143:1. Steely decided not to stop the vehicle, and he continued to drive down I-95 South, actively trying to evade Clemons. *See* Pl.'s Dep. 146:13–147:3, 149:12-14. During the pursuit, Clemons indicated to dispatch that he was pursuing Steely at speeds of up to ninety-two miles per hour. *See* Dash Cam Footage 2:53 ("Dash Cam"), ECF No. 22-6. Twice during the pursuit, Steely drove onto the exit median before swerving back into the lane of travel. *See id.* at 1:36, 3:35.

When Steely reached Exit 3B on I-95 South, he cut across multiple lanes of traffic to take the exit. *See id.* at 4:30. Once on the exit ramp, Steely attempted to make a sharp left turn,

crossing a concrete median. *See id.* at 4:36. At that time, Clemons initiated a PIT maneuver, colliding with the driver's side of Steely's car. *See id.* at 4:40. Steely's vehicle came to rest parallel with Clemon's police vehicle, both vehicles facing in opposite directions. *See* Photo of Scene, ECF No. 22-7. The entire pursuit lasted approximately four minutes. *See* Dash Cam :49-4:41.

Once the cars came to a rest, Clemons exited his police vehicle, drew his weapon, and approached the front of Steely's vehicle. *See* Pl.'s Dep. 166:23–167:10. Steely indicates that, at that time, he got up on the driver seat, in a crouched position. *See id.* at 167:10-17. At approximately this same time, Clemons verbally instructed Steely to "stop reaching." *See* Dash Cam 4:55, 4:57, 5:00. Seconds thereafter, Clemons fired a single shot, striking Steely in the leg. *See* Dash Cam 5:01; Pl.'s Dep. 167:17–168:2. Steely then exited his vehicle and ended up on the ground, at which time he resumed his efforts to resist arrest. *See* Pl.'s Dep. 187:14-17, 188:10-15, 189:18-22. With the assistance of a civilian, Clemons was able to handcuff Steely. *See id.* at 188:16-17, 189:10-14, 190:14-16.

## IV. LEGAL STANDARDS

### A. Review of Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *See* FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

### B. Fourth Amendment Excessive Force Claim – Review of Applicable Law

The Fourth Amendment protects ones' right to be secure from unreasonable seizure. U.S. CONST. AM. IV. Claims of excessive force are analyzed under the law governing unreasonable seizure. *See Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a seizure occurred and that it was unreasonable." *See id.* (quoting *Estate of Smith v. Mascaro*, 318 F.3d 497 (3d Cir. 2003)).

Reasonableness, in the Fourth Amendment context, is measured by asking whether, under the totality of the circumstances, "the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or

motivations."[1] *See id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). In assessing reasonableness, courts are to consider factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." *See id.* (citing *Graham*, 490 U.S. at 396). Courts may also consider

> the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*See id.* (citing *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

A court must judge reasonableness "from the perspective of a reasonable officers on the scene, rather than with the 20/20 vision of hindsight." *See id.* (citing *Graham*, 490 U.S. at 396-97). "[R]easonableness under the Fourth Amended should frequently remain a question for the jury . . . ."[2] *See id.* (quoting *Abraham*, 183 F.3d at 290).

Where deadly force is involved, the use of force "will only be considered reasonable . . . when 'it is necessary to prevent escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *See Abraham*, 183 F.3d at 288 (quoting *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)). Accordingly, the Third Circuit has set forth the inquiry for the use of deadly force as follows:

> Giving due regard to the pressures faced by the police, was it objectively reasonable for the officer to believe, in light of the totality of the circumstances, that deadly

---

[1] The officer's subjective intentions are irrelevant to the inquiry. *See Abraham v. Raso*, 183 F.3d 279, 289 (3d Cir. 1999) (noting good intentions will not cure an objectively unreasonable use of force and bad intentions will not mar an otherwise objectively reasonable use of force (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989))).

[2] "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *See Abraham*, 183 F.3d at 290 (quoting *Anderson*, 477 U.S. at 249).

force was necessary to prevent the suspect's escape, and that the suspect posed a significant threat of death or serious physical injury to the officer or others?

*See id.* at 289.

Because reasonableness requires inquiry into the "totality of the circumstances," the Third Circuit has made clear that a reviewing court may consider "all of the events transpiring during the officer['s] pursuit of [defendant] . . . in evaluating the reasonableness of [the officer's] shooting" *See id.* at 292 (expressly rejecting Eighth, Ninth, and Tenth Circuit line of cases that categorically excluded review of pre-seizure events from Fourth Amendment analysis).

### C. Qualified Immunity – Review of Applicable Law

"Qualified immunity is not merely immunity from liability, but rather immunity from suit, operating to free the recipient from the burdens of litigation." *Muth v. Woodring*, 666 F. App'x 137, 138 (3d Cir. 2016) (citing *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014)). Accordingly, courts are to resolve questions of immunity at the "earliest possible stages of litigation." *See id.* at 138-39 (quoting *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002)) (noting district court appropriately considered immunity question at pleadings stage).

Questions of qualified immunity require a two-facet analysis:

(1) The first facet "probes whether the allegations, '[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right[.]'" *See id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); and

(2) The second facet asks "whether the law was clearly established at the time of the violation." *See id.* (quoting *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d. Cir. 2010)). A law is clearly established if, "at the time of the challenged incident, [it] is sufficiently clear to 'provide[] fair warning to the defendants that their alleged conduct was unconstitutional.'" *Muth*, 666 F. App'x at 139 (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)).

Courts must be careful to "'not define clearly established law at a high level of generality' but, instead, conduct this analysis 'in light of the specific context of the case.'" *See Newman v. City of Philadelphia*, __ F. Supp. 3d __, 2020 WL 7640928, at *7 (E.D. Pa. Dec. 23, 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "[C]learly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Courts of Appeals." *See id.* (quoting *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018)).

Because qualified immunity is immunity from suit altogether, courts should rule on immunity "early in the proceedings so that the costs and expenses of trial are avoided." *See Saucier*, 533 U.S. at 200. Notwithstanding, "the imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." *See Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) (citing *Grant v. City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir. 1996). Accordingly, "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."[3] *See id.*

D. **Sovereign Immunity – Review of Applicable Law**

Pennsylvania law generally provides for the sovereign immunity of officials and employees acting within the scope of their duties. *See* 1 Pa. Cons. Stat. § 2310. Section 2310 states, in relevant part,

---

[3] The court clarified that "while . . . it is for the court to decide whether an officer's conduct violated a clearly established constitutional right, [the Third Circuit] also acknowledged that the existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue." *See Curley*, 298 F.3d at 278 (citing *Sharrar*, 128 F.3d at 828).

> it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

*Id.*

Notwithstanding, Pennsylvania law contains an explicit waiver of sovereign immunity under certain circumstances. *See* 42 Pa. Cons. Stat. § 8522(a). Therein, the General Assembly waives,

> in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a *negligent* act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity

*Id.* (emphasis added).

The General Assembly has only waived sovereign immunity for the commission of a "negligent act." *See* 42 Pa Cons. Stat. § 8522(a). "The commission of . . . intentional torts cannot be fairly characterized as 'negligence.'" *Zion v. Nassan*, 283 F.R.D. 247, 265-66 (W.D. Pa. 2012) (citing *Aetna Cas. & Sur. Co. v. Roe*, 650 A.2d 94, 103 (1994)). Therefore, an intentional tort "does not qualify as a 'negligent act' within the meaning of section 8522(a)." *See id.* (citing *Strothers v. Nassan*, Civ. A. No. 08-1624, 2009 WL 976604, at *12 n.12 (W.D. Pa. Apr. 9, 2009).

Accordingly, Pennsylvania has not waived sovereign immunity for the commission of intentional torts by an official or employee acting within the scope of one's employment. *See* 1 Pa. Cons. Stat. § 2310; 42 Pa. Cons. Stat. 8522(a). Conduct falls within the scope of one's employment

if it is the kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another, it is not unexpected by the employer.

See *Zion*, 283 F.R.D. at 266 (citing *Natt v. Labar*, 543 A.2d 223, 225 (1988)).

"Where the use of force is involved, the scope of an individual's employment depends on the expectations of his or her employer." *See id.* (citing *Strothers*, 2009 WL 976604, at *8). The Supreme Court of Pennsylvania "has long held that whether a particular act of an employee is within the scope of his employment is ordinarily a question of fact for the jury." *See Justice v. Lombardo*, 208 A.3d 1057, 1068 (Pa. 2019) (collecting cases). "[T]he only exception to this well-established rule is where neither the facts nor the inferences to be drawn from them are in dispute." *See id.* (citing *Orr v. William J. Burns Int'l Detective Agency*, 12 A.2d 25, 27 (Pa. 1940). "However, where more than one inference may be drawn from the facts, the issue of whether an employee was acting within the scope of employment is for the jury." *See id.* (citing *Iandiorio v. Kriss & Senko Enters., Inc.*, 517 A.2d 530, 534 (1986)).

## V. DISCUSSION

### A. Steely's Fourth Amendment Claim of Excessive Force

In his motion for summary judgment, Clemons asserts that his use of deadly force was reasonable under the Fourth Amendment.[4] In response, Steely argues that there are numerous material facts over which there is a genuine dispute. Upon review of the factual record, the Court finds that there are genuine disputes of material fact. Accordingly, Clemons' motion for summary judgment is denied as to Steely's excessive force claim.

---

[4] Although Steely asserts violations of both the Fourth and Fourteenth Amendments, his claim is appropriately analyzed under the Fourth Amendment "reasonableness" framework. *See Graham*, 490 U.S. at 395 (holding that all claims of excessive use of force by law enforcement should be analyzed under the Fourth Amendment framework).

At the heart of the Fourth Amendment excessive force inquiry is the reasonableness of the force used. *See Kopec*, 361 F.3d at 777. In order to find Clemons' use of deadly force reasonable, the Court must find that it was objectively reasonable for Clemons to believe (1) that the force was necessary to prevent escape, *and* (2) that Steely posed a significant threat of death or serious physical injury to Clemons or others. *See Abraham*, 183 F.3d at 288 (quoting *Garner*, 471 U.S. at 3). In doing so, this Court may consider the events that preceded the eventual use of deadly force. *See id.* at 291

With respect to whether the force was necessary to prevent escape, there are material facts that are in dispute. In his deposition, Clemons claims that Steely continued to "rev" the engine of his vehicle after Clemons initiated the PIT maneuver. *See* Def.'s Dep. 66:17–67:18. Clemons asserts that he believed Steely was about to run him over. *See id.* at 67:1-3. However, Steely asserts that his vehicle was "immobilized" and that the vehicle's engine had shut off when it came to rest on a guardrail after the PIT maneuver. *See* Pl.'s Dep. 163:8-11, 169:12-16. Accordingly, there remains a factual question over whether Steely was capable of fleeing, or even attempting to flee, by way of vehicle.

Clemons further justifies the use of deadly force based on the dangerous maneuvers that Steely engaged in during the nearly four-minute pursuit. Clemons testified that, based on these maneuvers, he concluded that Steely was willing to put society at risk. *See* Def.'s PSP Interview 2, ECF No. 22-4. However, whether these events support the reasonableness of Clemons' use of deadly force depends on material facts over which there is a dispute. As the Third Circuit recently noted, "[t]he fact that police may be justified to use force against a fleeing suspect one second, does not necessarily mean that they are justified in using the same degree of force once that individual no longer poses a threat." *See Peroza-Benitez v. Smith*, 994 F.3d 157, 171 n.7 (3d

Cir. 2021). In *Peroza-Benitez*, the Third Circuit indicated that whether a pursuit was ongoing and whether the defendant posed a live threat to the officers were questions for a jury. *See id.*

The Court faces similar unresolved questions of fact here. While Clemons claims the pursuit and threat were still live following the PIT maneuver, Steely testified in his deposition that his car was immobilized and that he was unable to exit the driver-side door. When viewed in a light most favorable to Steely, a reasonable jury could find that the pursuit had ended and that any threat to Clemons or others had terminated as well. Resolution of these disputed facts would necessarily involve weighing the credibility of the evidence. Accordingly, it is not for this Court to decide, on a motion for summary judgment, whether the pursuit and threat were still live.

On the second factor, whether Clemons was objectively reasonable in believing that Steely posed a significant threat of death or serious harm to Clemons or others, there also exists multiple disputes of material fact. In his deposition, Clemons testified that Steely had his bookbag between his legs on the driver seat. *See* Def.'s Dep. 80:20–81:4. Clemons also testified that Steely was "digging around in the bookbag . . . ." *See id.* Based on these movements, Clemons believed that Steely was "carrying a weapon, concealing a weapon, loading a weapon or trying to retrieve a firearm." *See* Def.'s PSP Interview 6. Accordingly, Clemons discharged his firearm a single time. Clemons indicated that "the sudden rising of [Steely's] body and both hands in his bookbag" caused Clemons to fire his weapon. *See* Def.'s Dep. 89:8-19.

Notwithstanding, Steely's testimony regarding the same period of time raises genuine disputes as to these material facts. Steely testified that he did not engage with his bookbag at all during the moments following the PIT maneuver and up until the time he was shot. *See* Pl.'s Dep. 179:12-15, 180:5-8. Instead, he claims that when he realized that he would be unable to

open his driver side door, he crouched on his driver seat and made a single reaching motion towards the passenger side door in an effort to exit the vehicle. *See id.* at 181:7-9.

The objective reasonableness of Clemons' use of force depends on the resolution of these factual questions. When the disputed facts are viewed in the light most favorable to Steely, a reasonable jury could conclude that Clemons' use of force was unreasonable. A jury could reasonably find that the pursuit had terminated and that Steely was not interacting in his backpack in such a manner that would warrant a reasonable belief that deadly force was necessary. Alternatively, a reasonable jury could resolve these questions in favor of Clemons, finding that the pursuit was still live and that Steely's movements indicated he posed a significant threat to Clemons' safety. For this reason, these factual questions must be submitted to a jury.

Accordingly, there are genuine disputes of material fact with respect to (1) whether the use of deadly force was necessary to prevent escape, and (2) whether Steely posed a significant risk to the officers or others. Therefore, summary judgment is denied with respect to Steely's excessive force claim.

### B. Clemons' Assertion of Qualified Immunity

Clemons next asserts that this Court should grant his motion for summary judgment because his use of force was not excessive under clearly established law, rendering him eligible for qualified immunity. A claim of qualified immunity requires two inquiries: (1) whether the officer violated a constitutional right, and (2) whether the right was clearly established at the time of the violation. *See Muth*, 666 F. App'x at 138. Here, viewing the disputed facts in a light most favorable to Steely, Clemons is not owed qualified immunity.

As discussed immediately above, there are genuine disputes of material fact regarding the reasonableness of Clemons' use of deadly force. The Third Circuit has cautioned that where there are genuine disputes of material fact as to the reasonableness of the officer's conduct that informs the immunity analysis, a grant of qualified immunity would be inappropriate at the summary judgment stage. *See Curley*, 298 F.3d at 278. When the disputed material facts in this case are viewed in the light most favorable to Steely, a reasonable jury could find that Clemons violated Steely's clearly established constitutional right to be free from excessive force. Accordingly, in light of those disputed facts, Clemons cannot prevail as a matter of law at the summary judgment stage on his claim of qualified immunity.

Under the qualified immunity analysis, a plaintiff must first show that the defendant officer violated a constitutional right. Viewing the disputed facts in the light most favorable to Steely, a reasonable jury could find that Clemons violated Steely's Fourth Amendment right to be from unreasonable seizure in the form of excessive force. This conclusion and the facts that support it are discussed at length above, *see supra*, Section IV.A. Accounting for the totality of the circumstances, a reasonable jury could find Clemons did not hold a reasonable belief that (1) deadly force was necessary to prevent escape and that (2) Steely posed a significant threat of death or serious physical injury to others.

Next, a plaintiff must show the defendant officer violated a clearly established right. Here, viewing the disputed material facts in the light most favorable to Steely, a reasonable jury could find that Clemons' conduct violated clearly established law. It is clearly established, by the Supreme Court, that the use of deadly force is reasonable where (1) the force was necessary to prevent escape, *and* (2) the defendant posed a significant threat of death or serious physical injury to the officer or others. *See Abraham*, 183 F.3d at 288 (quoting *Garner*, 471 U.S. at 3).

Accordingly, "[t]he reverse is also clearly established: an officer violates a person's Fourth Amendment right to be free from excessive force when an officer uses deadly force in the absence of a reasonable belief that the force is necessary to prevent immediate, serious injury to himself or others." *See Newman*, 2020 WL 7640928, at *7 (citing *Lamont v. New Jersey*, 637 F.3d 177, 185 (3d Cir. 2011)). The Third Circuit has previously concluded that its decision in *Abraham v. Raso*, 183 F.3d 279 (3d Cir. 1999) "was sufficient to place an officer on notice that his conduct (using deadly force against an individual driving [a] car when the driver did not pose a threat to the safety of the officer or others) was unlawful." *See Newman*, 2020 WL 7640928, at *7 (citing *Eberhardinger v. City of York*, 782 F. App'x 180 (3d Cir. 2019)); *see also Eberhardinger*, 782 F. App'x at 186 ("[i]t has long been clearly established that, absent any justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." (internal citation omitted)).

In order to properly define the right at issue, the Court must first view the totality of the circumstances, as a reasonable jury may find them, and in the light most favorable to Steely. First, a reasonable jury may find that deadly force was no longer necessary to prevent escape. A jury may credit Steely's testimony that his car was immobilized and that he was unable to open his driver side door. *See* Pl.'s Dep. 163:8-11, 169:12-16, 181:7-9. At that time, the vehicular pursuit had terminated, and any use of deadly force was therefore unnecessary to prevent escape. Second, a reasonable jury may find that Steely did not present a significant threat of death or serious physical injury to the officer or others. Steely testified that he did not engage with his bookbag at any time following the PIT maneuver. *See id.* 179:12-15, 180:5-8. Moreover, Steely's vehicle was immobilized by the PIT maneuver, and his engine shut off following the

PIT, meaning his vehicle no longer posed a danger to Clemons or others. *See id.* 163:8-11, 169:12-16. Finally, there was no firearm retrieved from the vehicle. *See* Def.'s Dep. 113:7-11, 116:22–117:4.

Accordingly, the right may be defined as follows: whether Steely has a clearly established Fourth Amendment right to be free from excessive force in the form of a gunshot wound to his leg when he (1) was subjected to a PIT maneuver seconds before, (2) was unable to exit the driver-side door of his immobilized vehicle that had shut off on impact,[5] (3) was not engaging with a backpack and had no firearm in the vehicle, and (4) was being instructed at gunpoint by Clemons.

To use deadly force under these circumstances would represent a violation of clearly established law. A reasonable jury may find that any pursuit had terminated and Steely did not pose a threat to the safety of Clemons or others. It is clearly established that the use of deadly force against an individual who poses no threat of harm to the officer or others is unreasonable. Therefore, under the facts as a reasonable jury may find them, Clemon's actions fall outside of the "hazy border between excessive and acceptable force" and, instead, onto the side of a

---

[5]     In his motion, Clemons makes much of the actions taken by Steely during the pursuit that preceded the shooting, using them to justify his use of deadly force. *See, e.g.*, Mot. 12, 14. Notwithstanding, as discussed above, the relevance of actions that occur during a pursuit prior to a seizure depends on whether the pursuit was still live, which is a question of fact for the jury. *See Peroza-Benitez*, 994 F.3d at 171 n.7. In accordance with this principle, a district court in the Third Circuit faced with a similar case defined the clearly established right as follows:
> it is clearly established that [p]laintiff has the right to be free from having deadly force applied to him, even after he fired a gun and threatened the safety of both the public and the officers, so long as the threat he posed was *no longer imminent* and he was not evading arrest.

*Rodriguez v. City of New Brunswick*, No. 12-4722(FLW), 2017 WL 6442097, at *18 (D.N.J. Dec. 18, 2017) (emphasis added).

violation of clearly established law.  *See Mullenix*, 577 U.S. at 18 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)).

Accordingly, because a reasonable jury could resolve the disputed facts so as to find that Clemons violated Steely's clearly established constitutional right, a grant of qualified immunity is inappropriate at this stage, and Clemons' motion for summary judgment is denied.  Clemons may reassert any qualified immunity defense at the time of trial.

### C. Steely's Claim for Assault and Battery

Finally, Clemons seeks summary judgment on Steely's claim for assault and battery, asserting sovereign immunity.  However, because of the genuine disputes of material fact discussed above, it would be inappropriate to grant summary judgment on the issue of sovereign immunity.

Pennsylvania has not waived sovereign immunity for the commission of intentional torts by an official or employee acting within the scope of one's employment.  Here, both of the alleged torts, assault and battery, constitute intentional torts under Pennsylvania law.  *Zion*, 283 F.R.D. at 265 (citing *Keenan v. City of Philadelphia*, 936 A.2d 566, 567–570 (Pa. Commw. Ct. 2007).  Accordingly, Clemons is owed sovereign immunity only if he was acting within the scope of his employment at the time the force was applied.

Where the use of force is involved, the scope of one's employment depends on the reasonable expectation of the employer.  *See id.* (citing *Strothers*, 2009 WL 976604, at *8).  Thus, the relevant question is whether the Pennsylvania State Police, accounting for the totality of the circumstances, would have reasonably expected Clemons to discharge his weapon at Steely.

Here, the material facts, and inferences to be drawn therefrom, are in dispute. Under well-established law, it would be inappropriate to take a question of sovereign immunity away from a jury at the summary judgment stage of the proceedings where such disputes of material fact exist. *See Justice*, 208 A.3d at 1068. Accordingly, Clemons' motion for summary judgment is denied as to his claim of sovereign immunity. Clemons may reassert any sovereign immunity defense at the time of trial.

## VI. CONCLUSION

Upon review of the record, the Court finds genuine disputes of material fact regarding whether Clemons' use of force was objectively reasonable. Thus, summary judgment is inappropriate on Steely's excessive force claim. Those same disputes of fact make summary judgment equally inappropriate on Clemon's assertions of qualified immunity and sovereign immunity. It is squarely the duty of the fact finder to weigh the credibility of the evidence and resolve those disputes. Accordingly, Clemons' motion for summary judgment is denied in its entirety.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge
